**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TAMIR ABDULLAH,** | ) | **CASE NO.  1:03CR486** |
| | ) | |
| **Petitioner,** | ) | **JUDGE JOHN R. ADAMS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **Respondent.** | ) | |
| | ) | |

The instant matter is before the Court upon Petitioner Tamir Abdullah's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, pursuant to 28 U.S.C. § 2255.  (Doc. 527).

## I. FACTUAL BACKGROUND

Petitioner, along with codefendants Calvin Caver and Fred Cloud, was charged by a Grand Jury of the United States District Court for the Northern District of Ohio on July 20, 2004, in a four-count superseding indictment.  (Doc. 301).  The superseding indictment charged Petitioner with one count of Conspiracy to Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, (Count 1), and one count of Possession with Intent to Distribute and Distribution of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), (Count 3).  (Doc. 301).  Following a jury trial, Petitioner was found guilty on both counts on September 22, 2004.  (Doc. 366, 368).

1

On March 2, 2005, the Court sentenced Petitioner to life imprisonment on Count One and ten years imprisonment on Count Three, with the sentences to run concurrently, to be followed by a term of ten years supervised release.  (Doc. 447).  Petitioner timely filed a notice of appeal two days after the sentence was imposed.  (Doc. 443).

The Sixth Circuit affirmed Petitioner's conviction, along with those of his codefendants, in a mandate issued January 3, 2007.  (Doc. 497).  The United States Supreme Court denied Petitioner's petition for a writ of certiorari on April 19, 2007.  (Doc.  501).  Petitioner filed the instant petition for federal habeas corpus relief on March 31, 2008.  (Doc. 527).  The government has filed a Response in Opposition, (Doc. 627), and Petitioner has filed a Brief in Response, (Doc. 631).  Petitioner has also filed a Supplement to his Response.  (Doc. 632).

## II. STANDARD OF REVIEW

"To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process."  *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).  A federal district court may grant relief to a prisoner in custody only if the petitioner can "demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict."  *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).

## III. LAW AND ARGUMENT

### A. Ground One: Government Suppression of Impeachment Evidence

The Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83 (1963), "obligates the government to turn over evidence that is both favorable to the accused and material to guilt or punishment." *Owens v. Guida*, 549 F.3d 399, 415 (6th Cir. 2008). Evidence that may be used to impeach a government witness falls within the *Brady* rule "[w]hen the reliability of a given witness may well be determinative of guilt or innocence." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (citations omitted). A violation of the *Brady* requirement has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Only where "the [withheld] evidence is material in the sense that its suppression undermines confidence in the outcome of the trial" does a *Brady* violation result in a constitutional error. *United States v. Bagley*, 473 U.S. 667, 678 (1985).[1]

Petitioner alleges that the government failed to disclose evidence of misconduct by Drug Enforcement Administration Special Agent Lee Lucas ("Agent Lucas"), which Petitioner claims would have been used to impeach Agent Lucas at trial. Specifically, Petitioner cites two cases from the Southern District of Florida in which Agent Lucas'

---

[1]   Petitioner also makes reference to a Jencks Act violation regarding impeachment evidence allegedly withheld by the government.  (Doc. 527 at 4).  The Jencks Act relates only to the production by the government of statements of government witnesses.  18 U.S.C. § 3500, et. seq.  Petitioner does not specify which statements of Drug Enforcement Administration Special Agent Lee Lucas should have been produced by the government, nor does he provide any argument that would support a Jencks Act violation.

3

credibility was found lacking.  *See United States v. Novaton*, 271 F.3d 968 (11th Cir. 2001); *United States v. Von Schlieffen*, Case No. 93-0187 (S.D. Fla. May 28, 2003).  As the government points out, both of these cases are publicly filed documents that were readily available to Petitioner.  Where evidence is available from a source other than the government, there is no *Brady* violation "because in such cases there is really nothing for the government to disclose."  *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).  Petitioner states that he was aware of alleged inaccuracies in the testimony of Agent Lucas, as well as that of Michael Morris, which, if true, should have led him to question the credibility of those witnesses and attempt to find evidence to impeach them.  The government's failure to provide Petitioner with evidence that was publicly available to him does not constitute a *Brady* violation.

Petitioner also submits a series of newspaper articles from the Cleveland Plain Dealer which relate to the investigation of Agent Lucas' use of informants in cases unrelated to the instant matter.  (Doc. 527, Ex. B).  He alleges that the government knew of the alleged misconduct by Agent Lucas and failed to disclose such knowledge or to alert Petitioner of the investigation, in violation of its *Brady* obligation.  The earliest of the articles, however, dates from July 24, 2007, almost three years after Petitioner was convicted.  (Doc. 527, Ex. B at 11-12).  Moreover, the investigation into Agent Lucas' use of informants did not arise until 2007, when one former informant claimed to have lied in a number of cases involving Agent Lucas.  There is no evidence before the Court to suggest that the government was aware at the time of Petitioner's trial of any *Brady* material related to Agent Lucas.  Because this information did not come to light until

4

after Petitioner's trial, the government could not have been obligated under *Brady* to disclose it to Petitioner.

Therefore, the Court finds that the *Brady* violation alleged in Ground One of the instant petition is without merit.

**B. Grounds Two Through Five: Ineffective Assistance of Counsel**

In Grounds Two through Five of the instant petition, Petitioner offers four bases upon which he claims his counsel was ineffective, either at trial or on appeal.

The Supreme Court, in *Strickland v. Washington*, 466 U.S. 668 (1984), devised a two-part inquiry for claims of ineffective assistance of counsel.  Under the *Strickland* test, Petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 688-94.  Thus, Petitioner must demonstrate both deficient performance and prejudice in order to succeed on his claim.  *Id.* at 686.  In analyzing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

*1. Plea Negotiations*

In Ground Two of the petition, Petitioner claims that his trial counsel was ineffective in failing to attempt to persuade him to accept a plea agreement offered by the government.  Petitioner asserts that he "did not understand or believe that this Court had no choice but to sentence him to mandatory life without parole if he was convicted at a jury trial," and that "[i]f counsel had advised Petitioner that he was on a suicide course by

5

taking this case to trial, Petitioner would have accepted the government's proposed plea bargain." (Doc. 527 at 12-13).  Petitioner further argues that counsel failed "to contact Petitioner's family to help persuade him not to pursue the suicidal course of going to trial." (Doc. 527 at 12).

A criminal defendant is entitled to the effective assistance of counsel during plea negotiations, and the *Strickland* analysis applies to claims of ineffective assistance with respect to such negotiations.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  In such cases, the deficiency portion of the analysis is unchanged, while the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Id.* at 59.  Where a petitioner chose to reject a plea offer, he must show "a *reasonable probability* that, but for his counsel's erroneous advice…he would have accepted the [government's] plea offer."  *Magana v. Hofbauer*, 263 F.3d 542, 551 (6th Cir. 2001).

In the instant matter, Petitioner has failed to show that counsel's performance was deficient with respect to the plea negotiations.  Petitioner admits that "counsel advised Petitioner of the government's offer." (Doc. 527 at 12).  Counsel is neither obligated nor permitted to force a defendant to accept a plea offer against the defendant's will.  Nor is it the responsibility of counsel to convince his client's family and friends to coerce the client into accepting a plea offer.  Petitioner does not allege that counsel advised him to reject a favorable plea offer, but only that counsel did not try hard enough to convince Petitioner to accept the government's offer.  This does not render counsel's performance constitutionally ineffective.

6

Even assuming counsel's performance was deficient, however, Petitioner has failed to show prejudice.  Petitioner's claimed ignorance of the mandatory minimum life sentence applicable to his case is belied by the record.  First, the government filed three notices pursuant to 21 U.S.C. § 851, which provided notice that due to his prior felony drug convictions, Petitioner was subject to a mandatory minimum sentence of life imprisonment if he was convicted on Count 1 of the Indictment.  (Doc. 221, 269, 318).  Moreover, at a plea offer hearing held on June 24, 2005, almost three months prior to trial, Petitioner was clearly advised that he was subject to a mandatory minimum life sentence on Count 1 if he went to trial and was convicted.[2]  At the hearing, counsel for the government stated:

> And your Honor, if I could continue, the gravity of the situation for Mr. Abdullah -- and I actually had an opportunity this morning to talk to him about this -- in the conspiracy count, your Honor, because of Mr. Abdullah's criminal record and the enhancements that have been filed by the United States, if Mr. Abdullah is convicted of Count 1 of the indictment at trial, he will be looking at a mandatory minimum of life without parole.

(Doc. 492, Transcript of Plea Offer Hearing at 3).  The Court then asked Petitioner if he was aware of the maximum penalties for each count with which he was charged. Petitioner answered, "Yes, your honor."  (Doc. 492, Pl. Offer Hrg. Tr. at 4).

Later in the hearing, counsel for the government explained that he had met with Petitioner and defense counsel to discuss the possibility of a proffer.  He stated:

> Mr. Abdullah indicated at this time -- at that time, excuse me, that he would be interested in a sentence of 50 months, a little over four years.  I indicated to him that because of his potential status as a career offender and

---

[2] While Petitioner was represented at the plea offer hearing by counsel other than his trial counsel, the plea offer proceedings are nonetheless instructive as to the merit of Petitioner's claims in Ground Two of the instant petition, especially with respect to the prejudice prong of the analysis.

because of his prior criminal history, that that sentence would not be available to him, nor would I have any chance to get that type of sentence approved.

I told Mr. Abdullah at that time, your Honor, that he was looking at a double digit sentence, somewhere over probably in the 15-plus year range after he received his credits for substantial assistance, if I could get that approved, and acceptance of responsibility.

At that time Mr. Abdullah indicated to me that he was not desirous of pleading guilty to a double digit sentence. I indicated to him that a 50-month sentence was not possible, and at that time the proffer session terminated.

(Doc. 492, Pl. Offer Hrg. Tr. at 12-13).

Finally, after Petitioner inquired about the possibility of representing himself and was told by the Court that he had the right to do so, the following exchange occurred:

THE DEFENDANT: No, your Honor. I'm facing life here, your Honor.

THE COURT: I don't think it's sinking into your head.

THE DEFENDANT: Your Honor, it's sunk. I'm not sitting here trying to argue with you or nothing. I am facing life. I have a family, and I am not about to sit here and go to jail for something I didn't do. And I am not about to do no 15 years for something I didn't do.

(Doc. 492, Pl. Offer Hrg. Tr. at 17-18).

The record of the plea hearing is thus instructive on two fronts. First, it demonstrates that Petitioner was advised that he was subject to a mandatory minimum life sentence on Count 1, which Petitioner acknowledged at least twice during the hearing. Second, Petitioner clearly indicated that he was not inclined to accept a plea offer from the government which would require him to serve 15 or more years in prison because he maintained that he was innocent of the charges in the Indictment.

8

Based upon the foregoing, and even assuming counsel's advice was erroneous, Petitioner has failed to demonstrate a reasonable probability that, but for such advice, he would have accepted the government's plea offer.  His claim of ineffective assistance of counsel based upon counsel's performance during plea negotiations is, therefore, without merit.

### 2. Hearing on Prior Convictions

In Ground Three, Petitioner argues that counsel was ineffective for failing to move for a hearing pursuant to 21 U.S.C. § 851(c) to determine the validity of the prior felony drug convictions which would be used to enhance Petitioner's sentence.  As a basis for such hearing, Petitioner states that he "believed his two prior convictions were related to each other and could only be counted as one conviction.  Therefore, Petitioner did not believe this Court had to sentence him to mandatory life without release."  (Doc. 527 at 15).  Petitioner does not offer any further grounds for a hearing pursuant to § 851(c).

Section 851(c) states, in pertinent part:

(1) If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the United States attorney. The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment.

Petitioner does not offer, and the Court does not find, any grounds upon which such a hearing should have been conducted.  The government established Petitioner's prior felony drug convictions and provided proper notice under § 851(a) of its intent to use those convictions to enhance his sentence.  (Doc. 221, 269, 318).  Petitioner's

9

mistaken belief that the convictions were related and should have counted as a single conviction for purposes of sentencing enhancement is not a valid ground upon which to challenge the use of the convictions.  Thus, Petitioner's counsel was not deficient in failing to move for a hearing pursuant to § 851(c).  For the same reasons, Petitioner has not shown prejudice under *Strickland*.

Petitioner's claim of ineffective assistance of counsel based upon counsel's failure to request a § 851(c) hearing, therefore, without merit.

### 3. Sentencing and Direct Appeal

In Ground Four, Petitioner asserts that his "counsel was ineffective for failing to argue at sentencing and on direct appeal that the government had failed to prove that the substance [he possessed] was 'crack' cocaine as defined by the [sentencing] guidelines and [Title 21, United States Code] Section 841(b)(1)(A)(iii)."   (Doc. 527 at 20). Specifically, Petitioner alleges that because U.S.S.G. § 2D1.1 was amended in 1993 to include a narrow definition of "cocaine base," which encompasses only crack cocaine for sentencing purposes, counsel was ineffective for failing to argue that Petitioner could not be sentenced based upon possession of 50 grams or more of cocaine base without the government having proven that the substance he possessed was crack cocaine.

The Sixth Circuit recently held in *United States v. Higgins*, 557 F.3d 381, 395-96 (6th Cir. 2009), that, consistent with § 2D1.1 of the sentencing guidelines, the term "cocaine base" as used in 21 U.S.C. § 841 means crack cocaine.  Accordingly, before the enhanced penalties of that section can apply, "the indictment must charge and the jury

must find beyond a reasonable doubt that the defendant committed a crime involving crack cocaine." *Id.*

In the instant matter, both requirements were met.  Count One of the superseding indictment in the instant matter charged Petitioner with conspiracy "to possess with the intent to distribute and to distribute more than 50 grams of a mixture or substance containing a detectable amount of cocaine base ('crack')…in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)."   (Doc. 301 at 2).   Petitioner was convicted at trial on Count One, and the jury found "beyond a reasonable doubt that the amount of cocaine base ('crack') conspired to be possessed and distributed by Tamir Abdullah in Count One is…at least 500 grams, but less than 1.5 kilograms of cocaine base ('crack')." (Doc. 366 at 2).

Based upon the language of Count One and the jury's verdict, counsel's representation did not fall below an objective standard of reasonableness in his failure to argue that the government had not proven that the substance Petitioner possessed was crack cocaine for purposes of the enhanced penalties under 21 U.S.C. § 841.  Any such argument would almost certainly have been rejected.  Counsel is not ineffective for failing to raise meritless objections or to pursue meritless issues on appeal.  *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990); *Mathews v. United States*, 11 F.3d 583, 585 (6th Cir. 1993).

Petitioner's claim of ineffective assistance of counsel based upon counsel's failure at sentencing and on direct appeal to challenge the sufficiency of the evidence as to the type of substance Petitioner possessed is, therefore, without merit.

11

*4. Cross-examination of the Government's Forensic Scientist*

In Ground Five of the petition, Petitioner claims that his trial counsel was ineffective for failing on cross-examination to question the government's scientific examiner as to whether the substance she tested was crack cocaine or some other form of cocaine base. (Doc. 527 at 21-24). Petitioner argues that his "counsel did not understand the importance of this testimony for sentencing purposes and failed to cross-examine the forensic chemist regarding the type of cocaine base that was seized in this case." (Doc. 527 at 23).

As an initial matter, it will be helpful to illustrate the differences between the various forms of cocaine base. The Seventh Circuit, in *United States v. Booker*, explained:

> Cocaine...is rarely used in its naturally occurring form, at least in the United States. Before cocaine is imported into the United States, it is generally converted into cocaine hydrochloride, more commonly known as powder cocaine.
>
> *             *             *
>
> Cocaine hydrochloride may be converted into what is referred to as freebase cocaine or cocaine freebase. Essentially, "freebase" means that the base (cocaine) is "freed" from the hydrochloride and converted into the same chemical state it was in before it became a salt. Freebase can be manufactured in different ways. In the 1970s, freebase would generally be made by dissolving cocaine in ammonia and adding ether or another organic solvent. This process, however, is dangerous to both the producer and the user because ether is flammable. A safer process for manufacturing freebase cocaine involves dissolving cocaine hydrochloride in baking soda and water, boiling the mixture until only a solid substance is left, and allowing it to dry. The result of this latter process is commonly known as crack.

70 F.3d 488, 491 (7th Cir. 1995), *superseded by sentencing guidelines on other grounds,* U.S.S.G. § 2D1.1 (citations and footnotes omitted).

12

The record demonstrates that on direct examination, the government's scientific examiner testified that Government's Exhibit 1 was an evidence bag "containing chunks of rock-like material," which tested positive for cocaine base.  (Doc.  471, Trial Transcript Vol. III at 641-42).  The following exchange then occurred:

Q.      What is cocaine base or crack, Ms. Lewis?

A.      Cocaine base is another – or crack, which is the street term for it, is another form of cocaine.  It is prepared using cocaine, the powder form of cocaine, or cocaine hydrochloride, and dissolving it in water and adding sometimes baking soda.  And that solution is then heated up and cooled, and that removes some of the impurities found in it.  And the resulting substance is a hard waxy material that you see here.

(Doc.  471, Trial Transcript Vol. III at 642-43).

On cross-examination, counsel for Petitioner inquired as to the process of making crack cocaine.  The examiner testified as follows:

Q.      Well, tell me what's required to make crack cocaine?

A.      As stated before, you dissolve the cocaine powder in water and you can add baking soda, and heat that mixture up, and cool it, and that will recrystallize to form the crack cocaine form that we have here.

(Doc. 471, Trial Transcript Vol. III at 652).

Thus, at two separate times during her testimony, the government's scientific examiner described the process for making crack cocaine, which is different from the process for producing other types of cocaine base, and then made reference to Government's Exhibit 1 as an example of the crack cocaine that is produced.  Any inquiry by counsel as to whether the substance was crack cocaine as opposed to another form of cocaine base would have been futile, as the record indicates that the answer

13

would have been in the affirmative.  Accordingly, trial counsel's representation was not objectively unreasonable for failing to make such an inquiry, and Petitioner was not prejudiced.

Petitioner's claim of ineffective assistance of counsel based upon counsel's failure to adequately cross-examine the government's scientific examiner is, therefore, without merit.

### C. Ground Six: Adoption of Codefendant Fred Cloud's Claims

In Ground Six of the petition, Petitioner moves to adopt the claims raised in codefendant Fred Cloud's ("Cloud") Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, pursuant to 28 U.S.C. § 2255. (*See* Doc. 505.)  Because the government has addressed the additional claims in its Response to the instant petition, the Court may consider such claims without further briefing.

#### 1. Ineffective Assistance of Trial Counsel

Adopting Ground Two of Cloud's petition, Petitioner asserts four additional grounds upon which his trial counsel was ineffective.  First, he argues that counsel should have moved for separate trials based upon the principles of *Bruton v. United States*, 391 U.S. 123 (1968).[3]  Petitioner further argues that counsel failed "to make appropriate and

---

[3]         In *Bruton*, the Supreme Court held that the Confrontation Clause of the Sixth Amendment precludes, in a joint trial, the admission of a non-testifying codefendant's confession.  *Id.* at 126.  This rule applies only where the non-testifying codefendant's statement is facially incriminating as to the defendant. *Richardson v. Marsh*, 481 U.S. 200, 207 (1987).  The Sixth Circuit has extended the *Bruton* rule to include not only a codefendant's confession, but any statement by a non-testifying codefendant that implicates the defendant.  *United States v. Bartle*, 835 F.2d 646, 651 (6th Cir. 1987).

        Nine of Abdullah's codefendants testified at trial, which renders *Bruton* inapplicable to any of their statements.  *Nelson v. O'Neil*, 402 U.S. 622, 627 (1971) ("The Constitution as construed in *Bruton*…is violated only where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for 'full and effective' cross-examination.").  Furthermore, the Confrontation Clause is not violated where a non-testifying codefendant's statement is admitted pursuant to a hearsay exception, *White*

necessary objections and motions for mistrial; to introduce evidence demonstrating [Petitioner's] innocence; and to object to the sentencing recommendation and the imposed sentence." (Doc. 505 at 4).

Neither Cloud nor Petitioner offer any argument or facts related to any of the above grounds. To the extent Petitioner alleges that counsel failed to move for separate trials based upon *Bruton*, he does not specify which of his codefendants' statements were improperly admitted. Likewise, it is unclear what objections counsel allegedly failed to make, what grounds existed for a mistrial, or what exculpatory evidence should have been presented. It is therefore not possible for the Court to undertake any meaningful review of the claim of ineffective assistance of trial counsel adopted by Petitioner from Cloud's petition. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).

While Petitioner also provides no support for his assertion that counsel failed to object to the sentence imposed, the Court finds that this argument is clearly belied by the record. Petitioner's trial counsel filed a sentencing memorandum prior to sentencing, in which he objected to the guideline enhancements applied by the probation officer in the Presentence Investigation Report, argued that both the guideline sentence and the mandatory minimum life sentence were inherently unfair and violated Petitioner's right to due process and equal protection, requested a sentence below the mandatory minimum,

_____

*v. Illinois*, 502 U.S. 346, 356 (1992), or for non-hearsay purposes, *Tennessee v. Street*, 471 U.S. 409, 414 (1985).

and moved for a downward departure from the applicable guideline range based on overrepresentation of criminal history.  (Doc. 423).  The fact that counsel's attempts at securing a lesser sentence were unsuccessful does not render his performance deficient.

Therefore, the Court finds that Petitioner's claim of ineffective assistance of trial counsel, as adopted from Cloud's petition, is without merit.

### 2. Ineffective Assistance of Appellate Counsel

Adopting Ground Three of Cloud's petition, Petitioner asserts that his appellate counsel was constitutionally ineffective for failing "to challenge the verdict on the grounds of the *Bruton* violations, the introduction of inadmissible and prejudicial hearsay and the insufficiency of the evidence of the drug amount." (Doc. 505 at 4).  Petitioner also alleges that appellate counsel was ineffective for failing "to challenge the reasonableness of the thirty-year sentence on Eighth Amendment grounds."  (Doc. 505 at 4).

With respect to counsel's failure to raise a *Bruton* argument, Petitioner's claim of ineffective assistance is without merit.  As discussed in Section III.C.1., *supra*, Petitioner has failed to provide facts, arguments, or citation to any authority which would allow the Court to engage in a meaningful analysis of counsel's representation relative to a *Bruton* claim.  Petitioner has thus failed to show deficient performance or prejudice in appellate counsel's failure to raise such a claim.

Petitioner also fails to provide support for his assertion that counsel did not challenge the admission of hearsay evidence.  As the government points out, Petitioner's codefendant, Calvin Caver ("Caver"), raised this very issue on direct appeal.  The Sixth

16

Circuit found that, while certain hearsay evidence was improperly admitted against Caver, such error was harmless because it was not more probable than not that the error affected the verdict, as "[t]he record was replete with direct evidence that Defendant Caver was dealing drugs." *United States v. Caver*, 470 F.3d 220, 240 (6th Cir. 2006). As with Caver, there was substantial direct evidence of Petitioner's guilt presented at trial. In the absence of specific examples of hearsay improperly admitted against him, Petitioner has failed to demonstrate that appellate counsel was ineffective for failing to raise the issue on appeal.

Next, Petitioner argues that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence regarding the amount of drugs Petitioner possessed. On direct appeal, Petitioner did challenge the sufficiency of the evidence with respect to his participation in the drug conspiracy. The Sixth Circuit affirmed Petitioner's conviction, finding in part:

> The government produced evidence that Defendant Abdullah also engaged in repeated, high-volume sales and purchases of crack cocaine. Hall testified that he sold Defendant Abdullah ounces or portions of an ounce of crack cocaine "every day, or every other day." Stokes testified that he purchased crack from Defendant Abdullah once a week. Howard, Morris, Anderson, Ralph Jones, and Walker also testified that they had engaged in crack cocaine transactions with Defendant Abdullah on more than one occasion.

*Id.* at 235. Such evidence was sufficient to support the jury's finding that Petitioner possessed "at least 500 grams" of cocaine base. *See* (Doc. 366 at 2). Because the argument would almost certainly have been rejected on appeal, Petitioner has not shown

that he was prejudiced by appellate counsel's failure to challenge the sufficiency of the evidence regarding drug amount.

To the extent Petitioner argues that appellate counsel should have challenged the sufficiency of the evidence of drug amount for purposes of sentencing, the argument is without merit. Because he had two prior felony drug convictions, Petitioner was sentenced based upon the mandatory minimum sentence of life imprisonment under 21 U.S.C. § 841(b)(1)(A). Any argument as to the specific amount of drugs he possessed would have been irrelevant for sentencing purposes, as the jury had already determined that Petitioner possessed enough cocaine base to satisfy the elements of § 841(b)(1)(A). Counsel was not ineffective for failing to raise a meritless argument on appeal. *Mathews*, 11 F.3d at 585.

Finally, Petitioner argues that appellate counsel was ineffective for failing to mount an Eighth Amendment challenge to the reasonableness of his sentence of life imprisonment without release. Any such challenge is plainly without merit in light of the Sixth Circuit's decision in *United States v. Hill*, 30 F.3d 48, 51 (6th Cir. 1994). There, the Court held that the mandatory life sentence prescribed by 21 U.S.C. § 841(b)(1)(A) was constitutional. Accordingly, Petitioner's appellate counsel was not ineffective for failing to raise the issue on appeal.

For the foregoing reasons, the Court finds that Petitioner's claim of ineffective assistance of appellate counsel, as adopted from Ground Three of Cloud's petition, is without merit.

18

### 3. Prosecutorial Misconduct – Subornation of Perjury, Witness Coercion

Adopting Ground Four of Cloud's petition, Petitioner alleges that the government introduced "false and coerced testimony of government witnesses."  (Doc. 505 at 5).  As support for such claim, Petitioner states that the "government's witnesses were uniformly threatened with additional prison time – up to life without parole – if they did not provide incriminating testimoney [sic]."  (Doc. 505 at 5).  He further contends that "many witnesses then testified against the defendants in contradiction of their earlier PD offers and/or grand jury testimony."  (Doc. 505 at 5).

Because Petitioner did not raise this issue on direct appeal, it is procedurally defaulted.  *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).  If a defendant procedurally defaults a claim by not raising it on direct appeal, he may bring the claim in a § 2255 petition only upon a showing of cause and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998).  Petitioner has failed to make any such showing.

Even absent procedural default, Petitioner's claim is without merit.  "Government misconduct that amounts to substantial interference with a witness's free and unhampered determination to testify may be deemed a violation of due process."  *United States v. Foster*, 128 F.3d 949, 953 (6th Cir. 1997).  Nevertheless, "[i]n carrying out his legitimate business it has always been properly within the prosecutor's prerogatives to offer [promises of leniency or of dismissal or reduction of charges] in return for a benefit to the government, often in the form of the defendant's cooperation."  *United States v. Ware*, 161 F.3d 414, 419-20 (6th Cir. 1998).  In failing to specify which witnesses were

19

allegedly coerced, Petitioner has not demonstrated that the government acted outside the permissible bounds of its power to elicit cooperation from any witness.

To succeed on a claim for prosecutorial misconduct based upon subornation of perjury, Petitioner "must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false."  *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989).  Petitioner has failed to meet this burden.  He does not specify what false testimony was allegedly presented by the government at trial. Petitioner makes only vague allegations which provide no grounds for the Court to examine his claim and which will not support a claim that the government suborned perjury.

Therefore, Petitioner's claim of prosecutorial misconduct based upon the government's coercion of witnesses and subornation of perjury, as adopted from Ground Four of Cloud's petition, is both procedurally defaulted and without merit.

### 4. *Bruton Violation*

Petitioner next adopts Ground Five of Cloud's petition, which alleges a *Bruton* violation based upon the introduction of incriminating statements made by non-testifying codefendants.  (Doc. 505 at 6).  By failing to raise a *Bruton* violation on appeal, Petitioner has procedurally defaulted such a claim.  He has also failed to show cause and prejudice or actual innocence to excuse his default.

Even if the claim is not procedurally defaulted, Petitioner has not demonstrated a *Bruton* violation.  As with the ineffective assistance of counsel claim based upon *Bruton* discussed at Section III.C.1, *supra*, Petitioner offers no facts, argument, or authority to

20

support his claim.  It is entirely unclear to which statements or witnesses Petitioner refers. The Court is thus unable to determine whether any such statements were improperly admitted.

Accordingly, the Court finds that the *Bruton* claim adopted by Petitioner from Ground Five of Cloud's petition is both procedurally defaulted and without merit.

### 5. Fair Trial

Petitioner, adopting the claim raised in Ground Six of Cloud's petition, next contends that he was denied the Fifth Amendment right to a fair trial by the introduction of "unfairly prejudicial evidence, hearsay and evidence against [Petitioner's] co-defendants that damaged him by association."  (Doc. 505 at 6).  These assertions are so vague and unsupported that the Court is wholly unable to evaluate their validity for purposes of the instant petition.  The Court finds, therefore, that the claim is without merit.

### 6. Insufficient Evidence

Adopting Ground Seven of Cloud's petition, Petitioner argues that his conviction was based upon insufficient evidence of either his involvement in the drug conspiracy or the amount of drugs attributable to him.  (Doc. 505 at 6).  The Sixth Circuit has repeatedly held that "the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a Section 2255 proceeding."  *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) (en banc).  Such claims may only be raised on direct appeal. *Id.*

On direct appeal, Petitioner did challenge the sufficiency of the evidence with respect to his involvement in the conspiracy.  The Sixth Circuit rejected the claim, finding that substantial evidence existed to show that Petitioner was a participant in the drug conspiracy.  *Caver*, 470 F.3d at 235.  Petitioner has provided no basis for this Court to find differently on the issue.

Petitioner did not challenge the sufficiency of the evidence related to the quantity of drugs he possessed, and he has not shown cause and prejudice or actual innocence to excuse his default.

Therefore, the Court finds that Petitioner's claim of insufficient evidence, adopted from Ground Seven of Cloud's petition, is procedurally defaulted as to the evidence of drug quantity, and is without merit.

### 7. Composition of the Jury Pool

Adopting Ground Eight of Cloud's petition, Petitioner argues that his "conviction was obtained as a result of an unconstitutionally selected and/or impaneled [sic] petit jury." (Doc. 505 at 6).  Specifically, he contends that the "racial composition of the jury pool caused a deprivation of [Petitioner's] rights to a fair trial by an impartial jury and to equal protection under the law as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution." (Doc. 505 at 6).

Because Petitioner did not raise this issue on direct appeal, he is foreclosed from presenting it in the instant § 2255 proceedings absent a showing of cause and prejudice or actual innocence.  Based upon the minimal argument presented, Petitioner has failed to make such a showing.

Petitioner's procedural default notwithstanding, the claim is without merit.  To establish a prima facie violation of the Sixth Amendment's requirement that a jury be drawn from a fair cross-section of the community, a defendant must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."  *Duren v. Missouri*, 439 U.S. 357, 364 (1979).  Petitioner has failed to show any of the *Duren* elements.

Therefore, the Court finds that his challenge to the composition of the jury pool, adopted from Ground Eight of Cloud's petition, is both procedurally defaulted and without merit.

### 8. Reasonableness of Sentence

Finally, Petitioner adopts Ground Nine of Cloud's petition, asserting that the sentence of life imprisonment without release imposed by the Court is unreasonable and unconstitutional.  Because Petitioner did not raise this issue on direct appeal, it is procedurally defaulted.  Moreover, as noted in Section III.C.2., *supra*, any such argument is foreclosed by the Sixth Circuit's holding in *Hill*.

Therefore, the Court finds that Petitioner's challenge to the reasonableness and constitutionality of his sentence, adopted from Ground Nine of Cloud's petition, is both procedurally defaulted and without merit.

### D. Request for Appointment of Counsel and Evidentiary Hearing

Petitioner asks the Court to appoint counsel "for supplemental briefing, raising any additional issues that may have merit, and to supplement the issues raised [in the petition]."  Additionally, Petitioner requests an evidentiary hearing.  Both requests are hereby denied.

Pursuant to § 2255(g), it is within the district court's discretion whether to appoint counsel to a petitioner seeking to vacate, set aside, or correct a sentence.  Because the Court finds that Petitioner's claims are plainly without merit, the interests of justice do not require the appointment of counsel in the instant matter.

In a § 2255 proceeding, "[a]n evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'"  *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)).  The record in the instant matter clearly demonstrates that Petitioner is not entitled to relief.  Therefore, no evidentiary hearing is necessary.


## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 527) is hereby **DISMISSED**.

24

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed.R.App.P. 22(b).

**IT IS SO ORDERED.**


  March 18, 2011           /s/  *John R. Adams*
Date                      **JOHN R. ADAMS**
                          **UNITED STATES DISTRICT JUDGE**